UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN RE STANWICH FINANCIAL
SERVICES CORP.

IVEY, BARNUM & O'MARA, LLC,
    Appellant,

v.

BEAR, STEARNS & CO., INC., and
HINCKLEY, ALLEN & SNYDER, LLP,
    Appellees.

No. 3:11cv1838 (SRU)

## MEMORANDUM OF DECISION

Appellant Ivey, Barnum & O'Mara, LLC (the "Liquidating Agent") appeals from April 7, 2011 and September 30, 2011 Orders of the United States Bankruptcy Court (Bankr. No. 01-50831 (AHS)). The Liquidating Agent contends that the Bankruptcy Court erred by concluding that the Liquidating Agent lacked standing to prosecute fraudulent conveyance claims pursuant to 11 U.S.C. § 544(b) and 11 U.S.C. § 548(a) against Bear Stearns & Co., Inc. ("Bear Stearns") and Hinckley, Allen & Snyder, LLP ("Hinckley Allen"). For the reasons set forth below, the orders are vacated and the case is remanded for further proceedings consistent with this opinion.

**I.    Standard of Review**

Federal district courts have jurisdiction to hear appeals from final judgments, orders, and decrees of the Bankruptcy Court under 28 U.S.C. § 158(a)(1). On appeal, the district court will review the bankruptcy court's conclusions of law *de novo*, and its findings of fact for clear error. *Mercury Captial Corp. v. Milford Connecticut Associates, L.P.*, 354 B.R. 1, 6-7 (D. Conn. 2006) (*citing* Fed. R. Bankr. P. 8013). The district court may "affirm, modify, or reverse a bankruptcy court's judgment order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

**II.     Background**

Stanwich Financial Services Corp. ("Debtor") filed a Chapter 11 bankruptcy petition on June 25, 2011.  On May 2, 2012, the Official Committee of Unsecured Creditors (the "Committee")[1] commenced an adversary proceeding on behalf of the Debtor seeking to recover allegedly fraudulent transfers made in connection with a leveraged buyout of Settlement Services Treasury Assignment, Inc. ("SSTAI").[2]  Bear Stearns acted as financial advisor and Hinckley Allen acted as legal advisor to SSTAI in connection with the leveraged buyout.

The Liquidating Agent alleged, *inter alia*, that Bear Stearns "knowingly and intentionally marketed the sale of SSTAI as a purchase of high quality, highly liquid and flexible assets," Orig. Compl. [doc. # 1-22] at ¶ 47, "caused or facilitated the sale of SSTAI . . . through a transaction that depleted trust assets by utilizing them to finance the purchase price," *id.* at ¶ 48, received payments for brokering and assisting with the sale of SSTAI's stock, *id.*, and received fraudulent transfers, *id.* at ¶¶ 54, 95, and 100. The Liquidating Agent also alleged, *inter alia*, that Hinckley Allen was an "immediate or mediate transferee of funds which are alleged to be fraudulent transfers" and received payments for legal services it provided in connection with the leveraged buyout, Orig. Compl., at ¶ 15. Counts I, V and VI of the original complaint sought a judgment voiding and recovering fraudulent transfers made to Bear Stearns and Hinckley Allen, among others. *See* Orig. Compl., at ¶¶ 94-101.

On October 28, 2003, the Committee filed an Amended Complaint, which supplemented

---

[1] The Liquidating Agent is the successor to the Committee under the Debtor's First Amended Chapter 11 Plan, which was confirmed on January 13, 2004. Pursuant to an Order dated April 16, 2002, the Debtor assigned to the Committee those claims under the Bankruptcy Code asserted in the Complaint against the defendants. *See also In re Stanwich Financial Services Corp.*, 288 B.R. 24, 27 (Bankr. D. Conn. 2002) ("Accordingly, it is ordered that the Committee has standing to commence and prosecute the instant adversary proceeding on behalf of the bankruptcy estate.").

[2] SSTAI was later renamed Stanwich Financial Services Corp.

factual allegations and added new counts against the "professional" defendants including: breach of, the aiding-and-abetting of a breach of, and conspiracy to breach fiduciary duties; intentional, negligent, and fraudulent misrepresentation; and with regard to Hinckley Allen, unjust enrichment. *See In re Stanwich Financial Services Corp.*, 317 B.R. 224, 227 (Bankr. D. Conn. 2004). Noting that "[a]ll of the Professional Counts are different avenues for alleging the same wrongdoing, *i.e.*, the Professionals' assistance in completing the LBO," *id.,* the court held that "[t]hose allegations fall directly under the *Wagoner* rule" and concluded that "the Committee lacks standing to assert the Professional Counts." *Id.* at 230.

In January 2005, the Liquidating Agent sought leave to file a Second Amended Complaint, which modified Counts I, II, V and VII and purported to cure defects previously identified by the Bankruptcy Court. In April 2011, the Bankruptcy Court denied the Liquidating Agent's motion to amend, holding that the amendment would be futile because the Liquidating Agent did not have standing to assert claims against Bear Stearns and Hinckley Allen. *In re Stanwich Financial Services Corp.*, 2011 WL 1331926.  The Bankruptcy Court determined that the claims were barred by the *Wagoner* rule, which states that "a claim against a third party for defrauding a corporation with the cooperation of management accrues to the creditors, not to the guilty corporation." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991). The Bankruptcy Court concluded that:

> The [Liquidating Agent] continues to allege that the debtor's sole shareholders, Pardee and Sutro, along with its professionals, including Bear Stears and Hinckley Allen, acted in concert to defraud, *inter alia*, the debtor's creditors. In that effort, the [Liquidating Agent] again alleges that Bear Stearns and Hinckley Allen knowingly participated with and assisted the fraudulent acts of Pardee and Sutro in planning and effectuating the Debtor's 1997 LBO. However, this time, the [Liquidating Agent] eliminates the phrase "aiding and abetting". . . . The [Liquidating Agent's] deletion of the phrase "aiding-and-abetting" is a mere cosmetic change and does not alter the fact the [Liquidating Agent] continues to assert its fraudulent transfer action against Bear Stearns and Hinckley Allen (and others) on the basis that "*they assist[ed]or effectuate[d] the 1997 LBO*."

*In re Stanwich Financial Services Corp.*, 2011 WL 1331926 at *2.

The Liquidating Agent filed a Motion for Reconsideration in which it also requested that the Bankruptcy Court clarify whether its April 2011 order barred the fraudulent conveyance claims asserted against Bear Stearns and Hinckley Allen in the original complaint. In September 2011, the Bankruptcy Court denied reconsideration and held that "[f]or the same reasons stated in the April 7th Ruling, it is equally futile to permit the Liquidating Agent to pursue its original cause of action against Bear Stearns and Hinckley Allen, *i.e.*, the Liquidating Agent lacks standing under the *Wagoner* rule to pursue its fraudulent transfer causes of action against those defendants. . . . [T]he court's April 7th Ruling precludes the Liquidating Agent from pursuing its fraudulent transfer claims against Bear Stearns and Hinckley Allen in its original complaint." *In re Stanwich Financial Services Corp.*, 2011 WL 4571986 at *1. The Liquidating Agent appealed the Bankruptcy Court's rulings.

### III. Discussion

"Under the Bankruptcy Code the trustee stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy." *Wagoner*, 944 F.2d at 118. *See also* 11 U.S.C. §§ 541, 542. This means that the trustee "has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Wagoner*, 944 F.2d at 118. Although the trustee ordinarily stands in the shoes of the debtor (and not the creditors), the Bankruptcy Code expressly allows the trustee to pursue certain avoidance actions that otherwise would belong to creditors. *See* 11 U.S.C. §§ 544, 548.

Sections 544 and 548(a) of the Bankruptcy Code allow a trustee to avoid fraudulent transfers. Section 544(b) provides that "a trustee may avoid any transfer of an interest of the

debtor in property or any obligation incurred by the debtor that is avoidable under applicable law by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b). Put more clearly, if an actual unsecured creditor could bring an avoidance claim under applicable state law, the Liquidating Agent has the power to bring that claim. Section 548(a) allows avoidance of a transfer of an interest of the debtor . . . that was made or incurred on or within 2 years before the date of the filing of the petition." 11 U.S.C. § 548(a). In addition, the transfer must have been made "with actual intent to hinder, delay or defraud any entity to which debtor was or became . . . indebted . . ." or, under certain circumstances, to avoid transfers in exchange for which the debtor "received less than a reasonably equivalent value in exchange for such transfer . . . ." 11 U.S.C. §§ 548(a)(1)(A), (B).

The Liquidating Agent argues that sections 544 and 548 give it standing to assert fraudulent conveyance claims against Bear Stearns and Hinckley Allen, both of which are alleged to have participated in the fraudulent conduct of SSTAI's management. The Bankruptcy Court ruled otherwise, relying on Second Circuit precedent, and determining that the statutory claims of fraudulent conveyance were merely a pretext for claims that the Liquidating Agent did not have standing to pursue.

The Second Circuit has held that a corporation "has no standing to assert aiding-and-abetting claims against third parties for cooperating in the very misconduct that it had initiated." *In re The Mediators, Inc.*, 105 F.3d 822, 826 (2d Cir. 1997). Hence, when professional defendants, such as lawyers and accountants, are accused of assisting a company's managers in wrongdoing, Second Circuit law says the claims cannot be asserted by the company, its trustees in bankruptcy, a committee of unsecured creditors, or anyone else standing in the shoes of the debtor corporation. *See Wagoner*, 944 F.2d at 120 ("A claim against a third party for defrauding

a corporation with the cooperation of management accrues to the creditors, not to the guilty party."); *Hirsch v. Andersen*, 72 F.3d 1085, 1094 (2d Cir. 1995) ("In any event, we are persuaded that the *Wagoner* rule should be applied here, and that Hirsch is precluded from asserting the professional malpractice claims alleged in the Complaint because of the Debtor's collaboration with the defendants-appellees in promulgating and promoting the Colonial Ponzi schemes.").

The Bankruptcy Court held that the *Wagoner* rule foreclosed the Liquidating Agent's fraudulent conveyance claims. The Court determined that the Liquidating Agent used sections 544 and 548 as a pretext for claims for which the Liquidating Agent does not have standing. *In re Stanwich Financial Services Corp.*, 2011 WL 1331926 at *2 ("The plaintiff's deletion of the phrase 'aiding-and-abetting' is a mere cosmetic change and does not alter the fact that the plaintiff continues to assert its fraudulent transfer action against Bear Stearns and Hinckley (and others) on the basis that they *'assist[ed] or effectuate[d] the 1997 LBO'* . . . ."). And the Court stated that the Liquidating Agent cannot avoid the consequences of the *Wagoner* rule simply by linking the claims to a statutory cause of action. *Id.*

In bankruptcy, claims "against a third party for defrauding a corporation with the cooperation of management, accrue to creditors, not to the guilty corporation." *Wagoner*, 944 F.2d at 120. Therefore, the Liquidating Agent cannot pursue aiding-and-abetting claims—they are barred by *Wagoner*. But the conduct alleged goes beyond aiding-and-abetting to include fraudulent transfer of assets.

Under Federal Bankruptcy law and Rhode Island law, fraudulent transfer is a transfer made with actual intent to hinder, delay or defraud an entity or without receiving reasonably equivalent value. *See* 11 U.S.C. § 548; R.I. Gen. Laws § 6-16-4. The Liquidating Agent alleges that the professional fee payments constituted fraudulent transfers because they were made with

the actual intent to hinder, delay or defraud or without receiving reasonably equivalent value. *See e.g.*, Ex. B Seconded Amended Complaint [doc. # 1-23] at 52. The fraudulent transfer claims and the aiding-and-abetting claims are not one and the same, and should be treated differently for purposes of standing. The Liquidating Agent does not have standing to pursue claims of fraud, malpractice, and other tort-based damages claims against Bear Stearns and Hinckley Allen that arise from Bear Stearns' and Hinckley Allen's alleged assistance in management's fraudulent diversion of corporate assets. But, the Liquidating Agent does have standing to assert fraudulent transfer claims.

The Bankruptcy Code expressly gives the Liquidating Agent the power to avoid certain transfers, and that power is not limited by *Wagoner*. First, when acting under section 544(b), a trustee is vested with the rights of actual creditors to avoid certain transfers. So even if the trustee itself is otherwise barred from asserting the claim because of *Wagoner*, the trustee, standing in the shoes of the creditors, is not barred from asserting the claim. Second, although a trustee cannot use statutory causes of action to avoid the consequences of the *Wagoner* rule, that rule is not a *per se* bar to all actions against a third party that arise from the fraudulent conduct of management and the third party. When Congress has specifically granted the trustee the power to assert the fraudulent transfer claim, *Wagoner* is inapplicable—standing has been statutorily conferred. *See In re Park South Securities, LLC*, 326 B.R. 505, 513 (Bankr. S.D.N.Y. 2005) ("The *Wagoner* Rule does not, however, apply to causes of action that the Bankruptcy Code specifically confers on a trustee or a debtor in possession."); *In re Hampton Hotel Investors, L.P.*, 289 B.R. 563, 580 (Bankr. S.D.N.Y. 2003) ("The rights to avoid such transfers, and to recover them for the benefit of the estate, are expressly conferred by federal law on the trustee . . . . It would be turning the *Wagoner* Rule and concepts of *in pari delicto* on their heads to hold

that the Trustee lacks standing to recover such payments."). If transfers, as alleged in the complaints, were made by SSTAI to Bear Stearns or Hinckley Allen that satisfy the elements of 11 U.S.C. § 548, R.I. Gen. Laws §§ 6-16-5(a) or 6-16-4(a), the Liquidating Agent can employ sections 544 and 548 to avoid the transfers.

Because I conclude that the Liquidating Agent has standing to pursue fraudulent conveyance claims against Bear Stearns and Hinckley Allen and that the case should be remanded to the Bankruptcy Court, I will not address the parties' other arguments except to say that the Liquidating Agent's claims under 11 U.S.C. § 548 fail as a matter of law. Section 548 states that "the trustee may avoid any transfer . . . incurred by the debtor, *that was made or incurred on or within 2 years before the date of the filing of the petition.*" (emphasis added). The two-year look-back period is a statutory element, not a statute of limitations, and therefore is not subject to equitable tolling.  The original complaint and the Second Amended Complaint refer to payments made to Bear Stearns and Hinckley Allen in 1997. *See, e.g.*, Orig. Compl., ¶ 54 ("On May 20, 1997 . . . make the following transfers . . ."); *id.* ¶ 55 (". . . receive transfers at the closing of the 1997 LBO which are alleged to be fraudulent transfers . . ."). Stanwich filed a voluntary chapter 11 bankruptcy petition on June 25, 2001, which is more than two years after the transfers were made. Because the Liquidating Agent's section 548 claims against Bear Stearns and Hinckley Allen cannot satisfy the temporal requirement of section 548, they fail as a matter of law.

## IV.     Conclusion

For the reasons stated above, the Bankruptcy Court's orders are vacated and the case is remanded to the Bankruptcy Court for further proceedings. The clerk shall close this file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 26th day of March, 2013.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge